SIMON WATERS *vs.* PACIFIC WOOL PRODUCTS COMPANY.

Suffolk.    May 22, 1929. — June 26, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Broker,* Commission.

At the trial of an action by a broker to recover a commission for procuring a purchaser of wool owned by the defendant, there was evidence that the defendant hired the plaintiff to sell the wool, the price for which "was around forty-six and one half cents a pound," and promised to pay him a reasonable sum as a commission; that the plaintiff had many interviews with a customer, to whom he submitted a sample, and procured an offer of forty-two cents, which was rejected by the defendant; that thereafter he procured an offer of forty-four or forty-five cents, which the defendant took under consideration; that within three weeks thereafter, without the plaintiff's having heard further

from the defendant, the wool was sold to the customer for forty-five and one half cents through another broker with whom the defendant had made an arrangement for financing the obligation he previously had assumed when he purchased the wool; that neither the defendant nor the second broker was acquainted with the customer before the sale, which was consummated by the second broker without submitting a sample. The defendant offered to show that the plaintiff's employment had been terminated before the sale was consummated. *Held,* that

(1) Although the plaintiff was not the exclusive agent of the defendant, a finding was warranted that he was the efficient cause of the sale which finally was made; and it was not necessary for him to have taken part in the actual consummation thereof;

(2) Even if it were found by the jury that the plaintiff's authority had been revoked by the defendant before the sale, a finding was warranted that the revocation was made in bad faith in order to deprive the plaintiff of his commission;

(3) A verdict for the defendant could not properly have been ordered on the evidence.

CONTRACT. Writ dated February 26, 1924.

Material evidence at the trial in the Superior Court before *Keating,* J., is stated in the opinion. At the close of the evidence, the judge denied a motion by the defendant that a verdict be ordered in its favor. The jury found for the plaintiff in the sum of $3,493. The judge reported the action for determination by this court, judgment to be entered on the verdict if the defendant's motion properly was denied; otherwise judgment to be entered for the defendant.

*R. B. Owen,* for the defendant.

*Lee M. Friedman,* for the plaintiff.

CROSBY, J. This is an action to recover a broker's commission. The declaration is in two counts, the first upon a special contract by the terms of which, it is alleged, the defendant agreed that if the plaintiff would procure a customer for certain wool, the defendant would pay him a reasonable sum for his services; that the plaintiff procured such a customer, but the defendant has refused to pay him for his services. The second count is upon an account annexed.

The plaintiff was a wool broker, in Boston, in 1923 and 1924. The defendant was during those years a dealer in wool whose principal place of business was in California, with an

office in Boston.   In response to a request by telegram sent by the defendant to the plaintiff, the latter called at the defendant's office in July, 1923, and was told by one Halman, a representative of the defendant, that the company had various lots of wool for sale and that he wanted the plaintiff to try to help sell them.   The plaintiff was given samples of the wool and was asked to see what offers he could get on certain of the lots, including a large quantity of so called "Lakeview" wool for which the price "was around forty-six and one half cents a pound."   The plaintiff at that time took a sample of this wool and offered it for sale to different customers during several months.   Some time after November 1, 1923, he first offered the wool to the firm of Searle and Hayward whom he had known since 1921 or 1922; thereafter he kept going to this firm and finally got an offer of forty-two cents a pound, which was rejected by the defendant.   The plaintiff continued trying to sell to this firm and finally obtained a third offer of about forty-four cents which he reported to the defendant in the early part of January, 1924.   He testified, when asked what the company said when he reported this offer to it, that "They still turned — they would let me know about it, let me know more about it"; and that thereafter he did not hear from the defendant.   One Searle, of the firm of Searle and Hayward to whom the wool was finally sold, was called as a witness and testified that this last offer was forty-five cents instead of forty-four cents; that the plaintiff reported back to him that the offer was too low and tried to get another offer which Searle did not make.   During the time that the plaintiff was offering the wool to Searle, he took Searle to the office of the defendant and introduced him to one Hitchcock, the defendant's manager.   The plaintiff learned soon after he obtained the last offer from Searle that the wool had been sold to Searle and Hayward through J. D. Meader and Company.   In the meantime the defendant had borrowed money from various banks on the security of this wool, and as its loans matured about December 1, 1923, it entered into an arrangement by which J. D. Meader and Company was to furnish the money to take up the bank loans, and, as security, hold the various lots

of wool including the Lakeview wool; part of this wool was sold by J. D. Meader and Company, as agents for the defendant, to Searle and Hayward for forty-five and one half cents a pound on January 21, 1924, soon after the plaintiff made the third offer to Searle and Hayward above referred to. Before this sale neither the defendant nor J. D. Meader and Company had ever done any business with Searle and Hayward, nor was either company acquainted with this firm. The total price paid for the wool was $280,000. There was evidence that the usual broker's commission was one per cent of the purchase price.

At the close of the evidence the defendant presented a motion that a verdict be directed in its favor. This motion was denied subject to the defendant's exception. The jury found for the plaintiff and the case is reported to this court.

Upon the entire evidence a verdict could not properly have been directed for the defendant. The plaintiff was not the exclusive agent of the defendant; he was employed to procure a customer, and if, while so employed, he procured a customer who was able and willing to pay the defendant's price for the wool, he is entitled to a commission. Hiltz v. Williams, 167 Mass. 454, 457. Cadigan v. Crabtree, 179 Mass. 474, 481. French v. McKay, 181 Mass. 485. Stuart v. Valsom, 249 Mass. 149, 151. If the plaintiff brought the parties together and was the efficient cause of the sale, he is entitled to a commission even if the bargain was closed in his absence. Willard v. Wright, 203 Mass. 406. Stuart v. Valsom, supra.

The evidence warranted a finding that the defendant employed the plaintiff as a broker to procure a customer for the wool and we do not understand the defendant denies that the plaintiff was originally so employed. The defendant offered to show that the plaintiff had been discharged as a broker, and that his employment was terminated before the sale was consummated; but the jury were not obliged to believe this testimony. There was ample evidence from which the jury could have found that the purchasers, Searle and Hayward, were unknown to the defendant at the time the plaintiff was employed; that the plaintiff showed them the samples

of wool, and during a period of several months had many interviews with them and obtained three offers; that after the last offer was submitted by the plaintiff to the defendant the negotiations between the plaintiff and the ultimate purchasers were pending up to the time of the sale by J. D. Meader and Company acting for the defendant. There was no definite and fixed price given to the plaintiff by the defendant for which he was authorized to sell. The evidence was that the sale price was "around forty-six and one half cents" a pound. It could have been found that the plaintiff was authorized to sell for a lower price if satisfactory to the defendant. There was evidence from which it could have been found that the defendant declined an offer for the purchase at forty-five cents, which was one half a cent less than was obtained upon the sale as finally consummated; that within a few days after the plaintiff had submitted the last offer, J. D. Meader and Company, acting for the defendant without ever having previously seen the customer and without submitting a sample of the wool, consummated the sale.

We are of opinion that, upon the evidence and the reasonable inferences to be drawn therefrom, the jury were warranted in finding that the plaintiff, who had conducted all the transactions with the customer covering a period of several months and had had many interviews up to the time the final transaction was consummated, was the dominating and efficient cause of the sale. Upon such findings it was not necessary for the plaintiff to take part in the actual sale to entitle him to a commission. *Desmond* v. *Stebbins,* 140 Mass. 339, 342. *Hiltz* v. *Williams, supra. Johnstone* v. *Cochrane,* 231 Mass. 472, 478. *Rollins* v. *Bazirgan,* 252 Mass. 279, 280.

If the jury found that the plaintiff was discharged by the defendant as its broker, and the sale was consummated as shown by the evidence, a further finding was warranted that such discharge was not made in good faith, but was made to obtain the benefit of the plaintiff's efforts without paying for them. It was said by Loring, J., in *O'Connell* v. *Casey,* 206 Mass. 520, at page 528, "Where the principal revokes the

broker's authority in bad faith in order to secure to himself the fruits of the broker's work without paying him for it, the revocation, being in fraud of the broker's rights, is of no effect so far as those rights and the trade subsequently made are concerned.   In such a case what is subsequently done is in legal contemplation done while the broker's authority remains unrevoked."   *French* v. *McKay, supra.   Elliott* v. *Kazajian,* 255 Mass. 459, 462.

It also could have been found that the act of the defendant in causing the sale to be made by J. D. Meader and Company as its agent was for the purpose of depriving the plaintiff of his commission.

The exceptions to the admission and exclusion of evidence have been carefully examined.   They need not be considered in detail; it is sufficient to say that the rulings made were without error.

In accordance with the terms of the report, judgment is to be entered for the plaintiff in the sum found by the jury with interest.

*So ordered.*